UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

RONALD P. DOE,

        Debtor.

Chapter 13
Case No. 17-20053

**ORDER DENYING CONFIRMATION**

This matter comes before the Court in connection with debtor Ronald P. Doe's efforts to confirm his April 3, 2017 Amended Chapter 13 Plan (the "Plan") (Docket Entry ("DE" 15). The Plan is premised upon Mr. Doe retaining his property located at 32 Clark Street in Saco, Maine (the "Property"), continuing to pay his mortgage and home equity line of credit, and receiving monthly rental income from the Property. To the extent Mr. Doe did not successfully terminate a certain purchase and sale agreement (the "P&S") he entered into pre-petition with James Swaka relative to the Property, he proposes to reject that contract upon confirmation of the Plan.

Mr. Swaka filed a proof of claim asserting a claim in the amount of $10,181.03, comprised of $725.00 in appraisal costs, $400.00 in inspection fees, $1,500.00 in deposited funds and $7,556.03 in legal fees. The proof of claim asserts that this claim is secured by virtue of a *lis pendens* recorded in the York County Registry of Deeds alerting potential purchasers of a pending action for specific performance Mr. Swaka commenced in state court pre-petition. That action was stayed by the commencement of this bankruptcy case.

Mr. Swaka objected to confirmation on several grounds including, but not limited to, his assertion that the Plan does not properly account for his ownership interest in the Property, that rejection of the P&S agreement is improper and the Plan does not provide for payment on his

secured claim.[1]  Following a January 11, 2018 trial on confirmation, the Court issued an Order Partially Overruling Objections to Confirmation and Directing Further Briefing on Remaining Issues (DE 77).  That order overruled Mr. Swaka's bad faith and disposable income objections but requested further briefing on two specific issues: (1) whether Mr. Swaka has an ownership interest in the Property; and (2) if so, what is the resulting impact on the Plan?[2]

After review of the evidence and testimony presented at the confirmation hearing, the parties' briefing on these issues, and the docket of this case, the Court determines that the Plan cannot be confirmed because the proposed rejection of the P&S does not properly address Mr. Swaka's potential equitable interest in the Property.

Mr. Doe and Mr. Swaka entered into the P&S on or about November 4 or 5, 2016.  The P&S provided that the sale was to close on or before December 16, 2016.  Mr. Doe testified at trial that, after he signed the P&S, he began having second thoughts about selling the property for a variety of reasons, including his growing concern about where he would live post-sale.   Both parties agree the sale did not close on or before December 16, 2016 but they disagree why as to why the closing failed to occur and which party is in breach of the contract.

Mr. Swaka testified that Mr. Doe's broker suggested an extension of the closing date to allow Mr. Doe to remove his personalty from the Property in accordance with the terms of the P&S Agreement.  The record establishes that Mr. Swaka notified Mr. Doe he was in breach of the P&S and scheduled a closing for December 30, 2016 at 10:00 am in Biddeford.  Mr. Swaka, his

---

[1] Mr. Swaka also objected on the grounds that the Plan was filed in bad faith and it does not propose to pay all of Mr. Doe's disposable income.

[2] The Order also requested further briefing with respect to Mr. Swaka's assertion that he holds a secured claim but Mr. Swaka conceded in his post-trial brief that the *lis pendens* does not give rise to a security interest.  Although Mr. Swaka has not amended his proof of claim, this Court treats the concession in his post-trial brief as a withdrawal of his objection to confirmation to the extent he previously asserted the Plan should treat his claim as secured.

2

broker and Mr. Doe's broker attended that scheduled closing, and though Mr. Swaka's broker had a check for Mr. Doe, Mr. Doe did not appear.

Mr. Doe, on the other hand, asserts that the closing did not occur because Mr. Swaka failed to timely obtain his financing and, therefore, the contract terminated. According to Mr. Doe, this was a "no brainer". He read the P&S as requiring a closing by December 16, 2016 and without financing, the closing could not occur. He saw this turn of events as presenting him a "way out" of the sale.

Mr. Swaka filed a complaint for specific performance in the York County Superior Court on January 4, 2017 requesting that the Superior Court order Mr. Doe to specifically perform his obligations under the P&S by accepting the balance of the purchase price and delivering an executed warranty deed for the Property. Mr. Doe failed to file a timely answer to the complaint and on January 31, 2017, Mr. Swaka's counsel filed an affidavit and a request for an expedited hearing for default judgment. Mr. Doe filed for bankruptcy relief later that same day.

The question of whether Mr. Swaka holds an ownership interest in the Property requires an examination of Maine law. Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Under Maine law, the purchaser of land under a contract holds equitable title to the property while the seller retains legal title. Foreside Common Dev. Corp. v. Bleisch, 463 A.2d 767, 769 (Me. 1983). This unique aspect of contract and real estate law emanates from the doctrine of equitable

conversion.[3] As the Law Court observed in Cross v. Bean, 83 Me. 61, 64, 21 A. 752 (1890) about a contract for the sale of real estate:

> . . . equity, regarding what ought to be done as done, (Gardiner v Gerrish, 23 Me. 46, 51; Hubbard v. Johnson, 77 Me. 139; Ricker v. Moore, Id. 292,) considers the agreement, so far as the interest in the land is concerned, as executed; and treats the vendee as the equitable owner of the land, and the vendor as owning the consideration. The consideration draws to it the equitable right of property in the land, and he who pays it becomes the true beneficial owner, and a trust is thereby created in his favor; and while the contractor or vendor still holds the legal title he holds it as the trustee for the vendee; and this naked trust, impressed upon the land, follows it into whose ever hands it may go by subsequent conveyances, until it reaches some holder who is a bona fide purchaser thereof for a valuable consideration without notice of the original vendee's equitable title, and then it becomes relieved of the trust.

So, up until the time that the P&S was terminated, if indeed it ever was, Mr. Swaka held equitable title to the Property and Mr. Doe held legal title and the right to demand payment of the balance of the purchase price. See, In re Garcia, 521 B.R. 680, 685 (Bankr. D. Idaho 2014).

While the record suggests that Mr.Swaka may continue to have an equitable interest in the Property, this Court is not prepared to make a final determination on that point. A finding on that issue is part-and-parcel to a specific performance action but it is not relevant to confirmation. Chapter 13 plans deal with the treatment of claims. The United States Bankruptcy Code (the "Code") defines the term "claim" to include a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B). The First Circuit has construed this

---

[3] "Essentially, equitable conversion results in the conceptualization that the purchaser becomes the equitable owner of the property and the vendor is equitably entitled to the purchase money promised in the contract as soon as a valid, enforceable contract arises. The doctrine when applied does, in fact, involve a conversion. The purchaser's interest in the contract is regarded as a real estate interest even though the purchaser does not yet have possession or legal title to the property." 14 Powell on Real Property § 81.03

4

definition to mean that an equitable remedy is deemed a "claim" only "when the payment of monetary damages is an alternative to the equitable remedy." Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.), 353 B.R. 253, 263 (1st Cir. 2005) ("Thus, where an award of monetary damages is a 'viable alternative' to the equitable remedy sought by plaintiffs, such as specific performance, the asserted equitable relief should be treated as a 'claim.'"). The P&S does not include a liquidated damages clause and neither party suggests that Mr. Swaka may be entitled to monetary damages as an alternative to specific performance if he successfully establishes that Mr. Doe breached the P&S. In other words, Mr. Swaka's only remedy is a transfer of legal title to the Property from Mr. Doe to Mr. Swaka; a remedy which cannot be reduced to a monetary claim that can be avoided, paid or otherwise addressed under the Plan.

The underlying equitable interest itself may not be relevant to confirmation but Mr. Swaka's apparently colorable claim for specific performance is pertinent to a feasibility analysis. The Plan is premised upon Mr. Doe retaining the Property and his proposed plan payments are funded, at least in part, if not entirely, by rent proceeds generated by rental units in the Property. If Mr. Swaka is successful in his action for specific performance, Mr. Doe not only loses title to the Property, but also to the rent proceeds flowing therefrom. In light of the fact that an action for specific performance is pending in the Maine State Court—though currently stayed—and Mr. Swaka appears very much interested in pursuing that remedy, it would seem as though the Plan's feasibility is significantly in question until the action for specific performance is fully adjudicated, settled or dismissed.

The Plan's proposal to reject the P&S upon confirmation does not cure this problem. Even if the P&S is an executory contract—a premise upon which the parties cannot and agree and this Court need not decide—rejection of that contract would not preclude Mr. Swaka from seeking

5

specific performance. The Code would treat that rejection as a breach of contract that occurred just prior to bankruptcy. 11 U.S.C. §365(g)(1) "Rejection does not cause a contract magically to vanish. The post-rejection rights and obligations of the debtor and the non-debtor are exactly the same as they would have been had the debtor first breached the contract and then filed for bankruptcy." Sir Speedy, Inc. v. Morse, 256 B.R. 657, 659 (D. Mass. 2000); The Ground Round, Inc., 482 at 19 ("Where a claimant holds something akin to a property right in something held by the debtor, that right survives bankruptcy and remains enforceable to recover the property from the estate, except where that right is cut off by provisions of the Bankruptcy Code.").

In its current state, the Plan cannot be confirmed and the Court struggles to see how any plan could be confirmed until Mr. Swaka's action for specific performance is fully and finally determined. As that action was already pending in York County Superior Court when Mr. Doe filed his bankruptcy case, this Court believes that the Superior Court is the appropriate venue to fully and finally determine whether Mr. Swaka is entitled to this particular equitable remedy under Maine state law and, therefore, would likely grant relief from stay to any party seeking to proceed with that litigation. Regardless, this Court does not believe that an objection to confirmation is the proper place to adjudicate that issue. As discussed above, specific performance is not a claim for plan purposes and, therefore, this is not simply a matter of liquidating a claim in the context of plan confirmation.

Perhaps Mr. Doe is capable of proposing a plan which would provide for the contingency that Mr. Swaka is successful in the action for specific performance. Or, perhaps, that issue is fully and finally litigated prior to confirmation. In the meantime, the Plan, in its current form, cannot be confirmed because rejection of the P&S does not, as the Plan suggests, extinguish any equitable ownership interest Mr. Swaka may have in the Property.

WHEREFORE, confirmation of the Plan is hereby denied. The Court will schedule a status conference to explore the further travel of this case.

Dated:  June 25, 2018          /s/ Peter G. Cary
                               Judge Peter G. Cary
                               United States Bankruptcy Court
                               for the District of Maine